IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                Plaintiff,

Vs.                                    Case No. 05-40040-01-SAC

ROBIN DEAN MURPHY,

                Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the government's motion to exclude the testimony of Mr. William Logan, defendant's proffered expert witness. The government contends that Logan is biased toward the use and legalization of marijuana, that he is not qualified to testify on the subject matter of his proffered testimony, that his testimony is not scientifically reliable, and that his testimony is irrelevant to the issues before the jury and would be "highly prejudicial" pursuant to Rule 403.

**General gatekeeper rule**

The district court's role in determining admissibility of scientific testimony under Fed.R.Evid. 702 is that of gatekeeper. *E.g.,Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Rule 702 sets the admission standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met.  *See* Fed.R.Evid. 104(a).

The court's duty is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The reliability of expert testimony turns on its status as scientific knowledge.  *Id.* at 590. The district court may determine that expert testimony is reliable by inquiring into the qualifications and background of the expert and asking if "the reasoning or methodology underlying the testimony is scientifically valid." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir.2004) (quoting *Daubert*, 509 U.S. at 592-93).

To fulfill its gatekeeping role, the court must conduct a two-part

inquiry. First, the court asks whether the proffered testimony has "a reliable basis in the knowledge and experience" of the relevant discipline. *Bitler*, 400 F.3d at 1232-33. To make such a determination, a court should inquire into the qualifications and background of the expert and ask if "the reasoning or methodology underlying the testimony is scientifically valid." *Id. (quoting Daubert*, 509 U.S. at 592-93). "[A]ny step that renders the analysis unreliable ⋯ renders the expert's testimony inadmissible." *Mitchell v. Genecorp., Inc.*, 165 F.3d 778, 782 (10th Cir.1999). "The law grants the trial judge broad latitude to determine" what are "reasonable measures of reliability." *United States v. Allerheiligen*, 221 F.3d 1353, 2000 WL 1055487, 11-12 (10th Cir. 2000), quoting *Kumho Tire*, 526 U.S. at 123. Second, the court must determine if the testimony is "relevant to the task at hand." *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597).

A district court has some latitude in determining the procedures used to perform its gatekeeping function, *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999), and is not required to hold a *Daubert* evidentiary hearing. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir.1997). Here, the court has sufficient evidence to assess whether the expert testimony rests on a reliable foundation and is relevant to the task at hand, so will satisfy the gatekeeping function by ruling on this motion in limine. *See Goebel v. Denver & Rio Grande*

*Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir.2000).

## Bias

The government makes much of the fact that Logan is biased toward the legalization of marijuana and the defense of those accused of violating marijuana laws. Defendant does not dispute that Logan is biased, but contends that his advocacy should not disqualify him as an expert and that the bases for his opinions are independent of his advocacy work. Dk. 112, p. 3.

The court believes that Logan's obvious bias toward those charged with marijuana offenses goes to the weight, not the admissibility of the testimony, and does not disqualify him from becoming an expert. *See e.g., Scheidt v. Klein*, 956 F.2d 963, 968 (10th Cir.1992). However, a "self-created advocacy role can be just cause for taking more care in determining [an expert's] qualifications, the relevance and reliability of his opinions, and the factual foundation for his opinions." *United States v. Allerheiligen*, 1998 WL 918841, *7 (D.Kan.1998).

## *Allerheiligen* case

Logan, a criminal defense attorney, has previously been barred as an expert in a similar case in this district. In *United States v. Allerheiligen*, 1998 WL 918841, *15 (D.Kan.1998), a defendant sought to call Logan to "testify to [the] defining elements which constitute personal use of marijuana" and "the expected yield of the marijuana seized." Judge Saffels barred his testimony, finding too

great a chasm between the subject matter of his proffered testimony and his expertise. *Allerheiligen*, 1998 WL 918841 at *15.

Logan's testimony was found to lack valid indicators of reliability, as required under *Daubert*.

> ... the information provided to the court by defendant tells the court nothing about the scientific reliability of the opinions proffered by Logan and Carroll. There is no evidence that either man's writings on marijuana have been recognized as a valid research effort or reference book in the field of botany. There is nothing of record that would lead this court to believe that it should rely on Logan's former clients, members of the California criminal defense bar, California marijuana users or the readers of his articles as a valid indicator of reliability.

*Allerheiligen*, 1998 WL 918841 at *15. The Tenth Circuit affirmed the court's decision to bar Logan's proffered testimony on yield and personal use of marijuana, finding that it extended beyond his demonstrated area of specialized knowledge.

**Logan's present report**

Logan's proffered expert report, distilled to its essential opinion, is that the marijuana which is the subject of this case was not purposefully cultivated. Logan's report indicates that "the plants I saw were very much *cannibas sativa*, as

opposed to the other sub-groups." Dk. 105, attachment, p. 2. The controlled substances law defines marihuana as, "all parts of the plant Cannabis sativa L...." 21 U.S.C.§ 802(16). The thrust of Logan's report is that the plants he examined were marijuana, but were not of a quality good for producing the "desired effects of marijuana consumption." *Id.*

Logan bases his opinion on his conclusions that the plants were the wrong species, were not properly spaced, were not in properly prepared or amended soil, had not been properly sexed (by removing the males and hermaphrodites), and were not properly protected from predators. It concludes:

> The actions of Murphy are inconsistent with the conclusion that he was cultivating these plants. Murphy appears of above-average intelligence and has apparent connections to farming. Only someone who was ignorant of farming practices in general, and marijuana growing in particular, would undertake to purposefully grow a (potentially) very valuable crop and remain so purposefully ignorant of each, every, and all of the basic requirements of successful cultivation of that crop.
>
> In conclusion, it is my opinion that the marijuana plans (sic) seized in this case were not purposefully planted, cultivated, or tended by anyone.

Dk. 105, attachment.

Logan's assertions or implications that " Murphy appears of

above-average intelligence," that Murphy is a generally a good farmer, and that the trail leading to the area where the plants were growing had been made by animals, are speculative and lack foundation and shall not be permitted. The primary issue is, of course, whether to permit Logan's opinion testimony that the marijuana plants were not cultivated.

**Logan's background**

Logan's curriculum vitae (Dk. 104, attachment), states that he has a B.A. in Political Science, a J.D. degree, and has worked as a criminal defense attorney since 1975. Not qualified as an expert on the cultivation of marijuana by his formal education, he seeks such status by virtue of his experience. The court appreciates that one can be an expert by reason of experience and acquired knowledge.

Logan lists several books and articles he has authored or co-authored, but presents no evidence that his writings on marijuana have been recognized as a valid research effort or reference book in the field of botany. Here, as in *Allerheiligen*, there is nothing of record that would lead this court to believe that it should rely on Logan's former clients, members of the California criminal defense bar, California marijuana users or the readers of his articles as a valid indicator of reliability. *See Allerheiligen*, 1998 WL 918841 at *15.

The same is true for the legal seminars Logan has presented and the

legal papers he has distributed. No record supports a finding that his work in the legal arena relating to strategies of criminal defense attorneys is scientifically reliable. Additionally, many of his seminars do not appear to focus on the issue of cultivation, and instead bear titles such as "medical marijuana" or broader "issues involved in the defense of marijuana cases."

Logan's previous experience as an expert on this topic remains a bit of a mystery. He asserts in his resume that he has:

> qualified and given evidence as an expert on various issues in marijuana cultivation and possession/possession for sale cases in over one hundred cases in more than thirty counties in California, as well as the Federal Courts of most districts of California, in Federal Courts in Guam, South Dakota, Montana, Texas, and Florida, and in the State courts of Wisconsin and Colorado.

In contrast, the list of cases Logan appended to his resume lists only 15 cases in the past eight years in which he has "appeared and testified." No prior testimony in any federal court is listed. Instead, all cases in which he has given live testimony are in California. Even assuming that Logan's representations about his testimony are not inconsistent,[1] no prior testimony in Kansas or about Kansas crops is

---

[1] Logan has apparently "given evidence" as an expert in over 100 cases, perhaps by deposition or affidavit, and has "appeared and testified" in 15 cases.

alleged.

Further, Logan's testimony and giving of evidence as an expert appears to have been on multiple topics other than the cultivation of marijuana, as evidenced in his resume:

> I have qualified as an expert on many issues in marijuana cases, including the potential yield from a particular project, the consumption issues, whether the amount grown/possessed was for personal use, the importance of the other factors affecting the issue of possession versus possession for sale, as well as other more exoteric aspects of marijuana cultivation, preparation and use. I have qualified and given evidence about the smell of marijuana on more than ten occasions, in State and Federal Courts around the nation.

This assertion fails to inform the court of how many times, if any, Logan has qualified as an expert on crop cultivation or rendered an expert opinion whether a particular crop was cultivated.

Logan asserts that he has "visited sites where marijuana was under cultivation over fifty times, in the United States, Canada, Africa, Mexico, Jamaica, and Holland," and "talked to the growers about methods, yields, and consumption." But this conclusory assertion fails to tell the court how many of the fifty times were in the United States, and whether any were in Kansas or in

geographic locations having climate, soil, and other growing conditions similar to those in Kansas. Cultivation of marijuana in Holland may have little in common with cultivation of marijuana in Kansas. The same problem is apparent with Logan's assertion that he has spoken to more than 300 marijuana growers about their cultivation practices and methods.

Logan indicates that he has reviewed many reports, read many books, and spoken with many people about marijuana issues including cultivation. But these and similar assertions require the court to trust that Logan's conclusions are sound, and are too generic to show the court that Logan's knowledge or experience qualifies him to give an opinion based on reliable principles and methods applied to the facts. For example, Murphy's conclusion that he saw no evidence of soil preparation or amendment was based solely upon the video tapes taken by the law enforcement officers and his "walking the area." The court believes that a scientifically reliable method to determine whether the soil had been prepared or amended by the addition of nitrogen, other nutrients or soil conditioners would be to test the soil for the presence of such substances. No such method is alleged to have been used.

Similarly, Logan's conclusion that the plants were not of the type of species which is usually cultivated was based solely upon his view of the plants and his determination that they contained low levels of THC

(tetrahydrocannabinol).  Yet Logan admits that "it is impossible to estimate the amount of THC in a growing plant by the way it looks," that THC concentrations vary range from less than one-half of one percent to almost thirty percent, and that "determining the relative drug strength (if any) of marijuana requires sophisticated chemical testing or a simple test by the consumer."  Instead of conducting either such test, Logan merely states, "it is not uncommon to find that the type of plant I saw in this case contains less than one-half of one percent of THC.  This level of drug will not produce the desired effects of marijuana consumption."  Dk. 105, attachment, p. 2. The court believes that a scientifically reliable method to determine whether these marijuana plants contained levels of THC which would produce the stated "effects of marijuana consumption" would be to test them for the presence of that substance.

Defendant contends that "Logan's opinions are scientifically reliable because he has extensive personal knowledge about marijuana morphology based, *inter alia*, on observation of over 50 cultivation sites and discussions with growers in addition to his extensive readings about marijuana botany." Dk. 112, p. 4.  This is tantamount to saying that any opinion Logan gives is scientifically reliable because of his knowledge and the basis of his knowledge.  This is insufficient to meet defendant's burden to show that the reasoning or methodology underlying Logan's testimony is scientifically valid.

Defendant contends that Logan's report demonstrates that he has applied the "basic principles of plant morphology and growth characteristics" to the evidence in this case, and that his resume reflects his "basis of familiarity with marijuana morphotology." Dk. 112, p. 2, 4. The court believes that defendant intends to refer in both instances to "morphology," which is defined to mean "a branch of biology that deals with the form and structure of animals and plants." Webster's New Collegiate Dictionary, p. 749 (1976). But a careful review of Logan's resume and report give rise to this court's firm conviction that Logan's area of expertise, which may include criminal defense in marijuana cases in California, does not extend to the cultivation of marijuana plants in Kansas. The court finds that the purported testimony of Logan about the species, spacing, soil, sexing, and vulnerability of the marijuana plants extends beyond his area of specialized knowledge, lacks foundation, and has not been shown to be scientifically reliable.

This court's previous critique of Logan's co-author, Rosenthal, is squarely applicable to Logan in this case.

> As for the general practices of outdoor marijuana growers, the court also finds an inadequate foundation for Rosenthal's testimony on this subject. Just saying you've talked with "many" outdoor growers does not make one an expert on the general practices of outdoor growers in Kansas.

Rosenthal offers nothing to suggest that the growers with whom he talked are a representative sample of marijuana growers. For that matter, Rosenthal does not explain why those growers' practices would be the same ones followed in Kansas. Rosenthal has never seen marijuana growing outdoors in Kansas and has never studied specifically the outdoor growing practices in Kansas. "Evidentiary reliability, or trustworthiness, is demonstrated by a showing that the knowledge offered is more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995) (internal quotation omitted).

*United States v. Kelley*, 6 F.Supp.2d 1168, 1184 -1185 (D.Kan.1998).

The court finds it unnecessary to address the government's contention that Logan's testimony is irrelevant and that its probative value is substantially outweighed by its prejudicial effect. The court notes only that good quality of drugs, in conjunction with their quantity and value, can give rise to an inference of intent to distribute them. *See e.g., United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1095-96 (5th Cir.1991), but poor quality of marijuana does not necessarily give rise to the converse inference, *see United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir.1990) (finding "the substantial quantity of the load and the poor quality of ditch weed support an inference that [defendant] planned to distribute the drug as a filler for other marijuana rather than to consume it all himself.)

For all the reasons stated above, the court finds that Logan has not been shown to be qualified to give an expert opinion on the cultivation of marijuana in Kansas.

IT IS THEREFORE ORDERED that the government's motion in limine to exclude proffered testimony of William Logan (Dk. 110) is granted.

Dated this 7th day of September, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge