IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

                              Plaintiff,

         Vs.                                    Case No. 05-40040-01-SAC

ROBIN DEAN MURPHY,

                         Defendant.


MEMORANDUM AND ORDER

         Charged with two counts of drug trafficking, the defendant

Robin Murphy entered a plea of guilty on September 12, 2006, to count two

of the indictment–possession with the intent to distribute approximately 258

marijuana plants in violation of 21 U.S.C. §  841(a)(1) with reference to 21

U.S.C. §  841(b)(1)(B).  The penalty provision for this offense of conviction

sets out a mandatory minimum sentence of five years and a maximum

sentence of 40 years, and it further precludes the court from granting

probation or suspending the sentence.  21 U.S.C. § 841(b)(1)(B).  The

presentence report (PSR) recommends a guideline sentencing range of 60

months based on the applicable mandatory minimum and in the absence of

this statutory minimum, a guideline range of 33 to 41 months (criminal

history category of one and a total offense level of 20 from a base offense level of 18 for the 258 marijuana plants and a two-level enhancement for obstruction of justice).

The day after the PSR was prepared and eight days before the scheduled sentencing hearing, the defendant filed a motion to withdraw his guilty plea.  (Dk. 133).  He argues the court should grant his motion because 1) the plea agreement is based on the government's promise that it would not oppose a sentence of probation if recommended by the PSR and this promise is unfulfillable as § 841(b)(1)(B) prohibits a sentence of probation; 2) the plea agreement is not voluntary as there was no meeting of the minds on what the defendant had to do after his plea to be eligible for the safety valve provision; and 3) the government breached the plea agreement in its comments to the PSR writer regarding the defendant's objections concerning the obstruction of justice enhancement and the acceptance of responsibility adjustment.  The government responds opposing the motion on each requested ground.  (Dk. 137).

**GOVERNING LAW**

"There is no absolute right to withdraw a guilty plea."  *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir.1990), *cert. denied*, 498

2

U.S. 1122 (1991); *see United States v. Vidakovich*, 911 F.2d 435, 439

(10th Cir.1990) ( "[A] defendant does not have any absolute right to

withdraw his plea of guilty even though the motion is made before

sentencing"), *cert. denied*, 498 U.S. 1089 (1991).  Under Fed. R. Crim. P.

11(d), the district court may permit a plea to be withdrawn that has been

accepted if before sentencing "the defendant can show a fair and just

reason for requesting the withdrawal."

A motion to withdraw a guilty plea is committed to the district

court's sound discretion "to determine what circumstances justify granting"

it.  *United States v. Jones*, 168 F.3d 1217, 1219 (10th Cir. 1999).  Even so,

such motions "'should be viewed with favor," and a "'defendant should be

given a great deal of latitude.'"  *United States v. Siedlik*, 231 F.3d 744, 748

(10th Cir. 2000) (quoting *United States v. Rhodes*, 913 F.2d at 845).  "This

does not mean, however, that such motions are automatically granted."  *Id*.

The burden rests with the defendant to establish a "fair and just reason" for

the withdrawal of his plea. *Id*. (citations omitted).

"A defendant may withdraw a plea that has been entered into

involuntarily."  *United States v. Williams*, 919 F.2d 1451, 1455 (10th Cir.

1990) (citing *McCarthy v. United States*, 394 U.S. 459, 471-72 (1969)),

3

*cert. denied*, 499 U.S. 968 (1991).  "A guilty plea is void if it is not knowing and voluntary."  *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000) (citing *Parke v. Raley*, 506 U.S. 20, 28 (1992)).  The most frequently followed standard for determining voluntariness is that articulated by the Supreme Court:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.*, bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970); *see United States v. Krejcarek*, 453 F.3d 1290, 1297 (10th Cir. 2006).  The plea must "'represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).  "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision."  *Brady*, 397 U.S. at 757 (That the government's case was misapprehended or his likely sentence was miscalculated will not entitle a defendant to withdraw plea

4

long after it was accepted).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santabello v. New York*, 404 U.S. 257, 269 (1971); *see United States v. Brye*, 146 F.3d 1207, 1209 (10th Cir. 1998).  "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand."  *Mabray v. Johnson*, 467 U.S. 504, 509 (1984).   In complying with a promise, the government may not "rely upon a  rigidly literal construction of the language of the agreement, nor may it accomplish through indirect means what it promised not to do directly."  *United States v. Cooper*, 70 F.3d 563, 565-66 (10th Cir. 1995) (quotations and citations omitted).

"To determine whether a breach has, in fact, occurred, we apply a two-step process: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered."  *United States v. Brye*, 146 F.3d at 1210.  "General principles of contract law define the government's obligations under [a plea] agreement,

5

looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003). Courts are to interpret plea agreements "according to the defendant's reasonable understanding of its terms." *United States v. Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006). The plain and unambiguous terms of a plea agreement may not be changed by parol evidence. *United States v. Gamble*, 917 F.2d 1280, 1282 (10th Cir. 1990). If the government breaches a plea agreement and the agreement is based on an unfulfillable promise, "the only adequate remedy" is to permit the defendant's withdrawal of his plea. *United States v. Cooper*, 70 F.3d at 567.

The trial court may accept a plea without informing a defendant of the applicable sentencing guideline range. *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 2318 (2006). "Rule 11 requires only that the defendant be informed of 'the mandatory minimum penalty provided by law . . . and the maximum possible penalty provided by law.'" *Id.* (quotations and citations omitted). Counsel's incorrect estimates of the applicable guideline range do not prove a violation of Rule 11 or that a plea of guilty was involuntary and unknowing.

6

*Id.* at 1100.  "A defendant's subjective understanding [as to his anticipated sentence], if it is not based upon any promise made by the defense attorney, the prosecutor, or the court, will not undermine the constitutionality of the plea or raise a question of whether the state breached its end of a plea bargain."  *Cunningham v. Diesslin*, 92 F.3d 1054, 1061 (10th Cir. 1996).  Simply put, counsels' errors may render a plea involuntary if they materially misrepresent the consequences of a guilty plea, but a mere "erroneous sentence estimate does not render a plea involuntary."   *United States v. Silva*, 430 F.3d at 1099.

**TERMS OF PLEA AGREEMENT**

In exchange for the defendant's plea, the government agreed to recommend the defendant receive the acceptance of responsibility adjustment and the benefit of the safety valve provisions applied and to not oppose a sentence of probation, all on the terms set forth in the written plea agreement.  Those terms provide:

> **b.**  To recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility.  In addition, if the defendant's offense level is 16 or greater, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility because the defendant timely notified the Government of his intention to enter a plea of guilty.  However, the Government's obligation concerning acceptance of responsibility is

contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States.  If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the Government shall oppose any reduction for acceptance of responsibility without breaching this agreement.

**c.**  To recommend application of the "safety valve" provisions of the Guidelines, if defendant qualifies under each of the five (5) factors enunciated therein.  However, the Government's obligation pursuant to this portion of the plea agreement is contingent upon the defendant's actually qualifying under each of the five (5) factors enunciated in the "safety valve" provisions of the Guidelines, his continuing manifestation of acceptance of responsibility, and no attempts to obstruct justice, as defined by U.S.S.G. § 3C1.1.  The defendant hereby agrees and stipulates that should he deny his involvement, give conflicting statements as to his involvement, or engage in additional criminal conduct, including, but not limited to, personal use of a controlled substance, the Government shall advocate that the "safety valve" provisions of the Guidelines shall not be applied in this matter.

. . . .

**e.**  To not oppose a sentence of probation if recommended by the U.S. Probation Officer who authors the Presentence Investigation Report in this matter.

(Dk. 117).  In sum, the government agreed to 1) recommend the reduction

for acceptance of responsibility so long as the defendant continued to

manifest acceptance, 2) recommend the application of the safety valve

provisions if the defendant actually qualifies under each of the required

8

factors, and 3) not oppose a sentence of probation if the probation officer writing the PSR recommended probation.  All three promises also were conditioned on the defendant not engaging in other defined conduct.

**CHANGE OF PLEA HEARING**

After the defendant was sworn to tell the truth, the court thoroughly examined him to determine whether his plea was knowing and voluntary.  The government summarized the above relevant terms of the plea agreement, and the  defendant agreed to the summary of those terms and said those were the only promises made for his plea of guilty to count two.  (Dk. 131, p. 8, 10).  The defendant answered the court that he was pleading guilty because he was actually guilty.  *Id.* at 10.  The defendant testified he agreed with the factual basis appearing in the plea agreement.  *Id.* at 13-14.

The court informed the defendant of the maximum and minimum statutory penalties for the offense of conviction, and the defendant said he understood the information.  (Dk. 131, p. 15).  The court explained that it would consider the advisory sentencing guidelines in sentencing the defendant, that a PSR would be prepared for determining those guidelines, that the court would address objections to the PSR, and that the court may

9

impose a sentence longer or shorter than the one recommended by the guidelines. *Id.* at 15-16. The defendant said there had been no promise made with certainty as to what sentence would be imposed. *Id.* at 17. In the change of plea petition signed by the defendant, he represented that "no officer or agent of any branch of government (federal, state, or local) has promised, suggested, or predicted that I will receive a lighter sentence, or probation, or any other form of leniency if I plead 'GUILTY,' except . . ." as stated in the plea agreement. Govt's Ex. 1, p. 3).

After finding that the defendant's plea was freely, voluntarily and knowingly given, the court took up the defendant's release pending sentence. The court reminded the parties that this was a mandatory detention case and that release was possible only if there were exceptional circumstances or if the government were to recommend a sentence of no imprisonment. (Dk. 131, p. 21). The court and the government's attorney then exchanged the following comments:

> THE COURT: . . . That's–that's not–or that the government would not recommend at all any imprisonment. Would the government recommend that?
> MR. HOUGH: Judge, as the plea agreement provides we're not opposing probation if recommended by the author of the presentence investigation report. My understanding is that the defendant has no criminal history and may well be safety valve eligible, so it's possible.
> THE COURT: Is the government going to recommend no

imprisonment?

MR. HOUGH:  We may, depending upon the recommendations of the presentence report.

THE COURT:  But it depends on that?

MR. HOUGH:  Yes, sir.

THE COURT:  Well, you do not independently indicate that you will make a recommendation of no imprisonment, regardless what the probation office?

MR. HOUGH:  Judge, the plea agreement explicitly says that it's dependent upon the recommendation and presentence investigation and we will not oppose a sentence of probation if recommended by the probation officer who authors the presentence investigation report in this matter, and that may happen.

THE COURT:  Let's assume for the moment that the probation office does not recommend that, as you have just read it, would you still recommend no imprisonment?

MR. HOUGH:  I have no authority to do that, no, sir.

THE COURT:  All right.  I must find exceptional circumstances. . . .

(Dk. 131, pp. 21-23).  Defense counsel later asked the court to clarify its

earlier comments so as to recognize the defendant's expectation that

probation remained a possible sentence:

MR. EYE:  Your Honor, only one very brief clarification, it's based on the Court's comments just now.  It's–there is the possibility, and we have worked this out through extensive negotiations between Mr. Hough and I, actually extensive probably doesn't even quite cover it in this instance, it has been exhaustive, and we do recognize that there are circumstances that could require a term of imprisonment, but we also recognize that circumstances here may permit a sentence that does not include imprisonment.  I just want to make sure that from the Court's comments just now about surrendering to an institution that that doesn't necessarily mean that that's what's going to happen, but, rather, that that determination will be made after the sentence–presentence investigation process has been completed and the Court's had an opportunity to consider that for sentencing

11

purposes.

(Dk. 131, pp. 30-31).  The court explained that its comments about surrendering to an institution were not meant to forecast the kind or length of sentence but were intended to address the situation in the event of a sentence of imprisonment.   *Id.* at 31-32.  There is no dispute that at the change of plea hearing, the defendant never learned he was statutorily ineligible for probation and, instead, he was led to believe by his counsel, the government's counsel and the court that a sentence of probation was possible.

## UNFULFILLABLE PROMISE

The defendant contends his plea "was based, in large part," on the government's promise to not oppose a sentence of probation if recommended by the PSR.  (Dk. 133, p. 7).  The government's promise was unfulfillable for the defendant's offense of conviction did not carry any statutory possibility of probation and the probation officer authoring the PSR could not have lawfully recommended a sentence of probation.  Citing *United States v. Cooper*, 70 F.3d 563 (10th Cir. 1995), the defendant maintains the "only remedy" appropriate here is the withdrawal of his plea. (Dk. 133, p. 7).

12

According to the government, the defendant's position "ignores the negotiations and expectations of Murphy providing information for consideration of a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)." (Dk. 137, p. 15). The government claims its promise not to oppose probation as stated in the plea agreement is merely "evidence of the government's belief that Murphy may provide information that qualifies pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)." *Id.* at 10. The government argues *Cooper* is "distinguishable" as the promise of probation there was the only consideration for the plea. The government finally remarks that the defendant's reliance on the government's promise is belied by his sworn plea petition, the defense counsel's comments during the change of plea hearing, and defense counsel's failure to address this topic in his affidavit.

In *Cooper,* the plea agreement on a conviction for theft of government property provided that the only inducement for the defendant's plea was the government's recommendation that the defendant receive probation. The plea agreement also provided some guideline calculations based on the value of the stolen property. The PSR, however, recommended a higher loss figure and a resulting higher offense level that

precluded a sentence of probation under the guidelines.  At the sentencing

hearing, the government advocated in favor of the higher loss figures and

never explicitly recommended probation.  The defendant there argued:

> Mr. Cooper argues that the government breached the plea agreement
> by failing to recommend probation. He also argues that the
> government breached the agreement by presenting evidence of
> conduct occurring prior to January 31, 1990 in contravention of the
> stipulation that all relevant conduct occurred after January 31, 1990;
> by presenting evidence of loss that mandated a prison sentence
> greater than probation; and by acting in bad faith by knowingly
> creating a situation in which the court could not possibly adopt a
> recommendation of probation. Thus, Mr. Cooper's basic legal
> argument is that the contract fails because the consideration for which
> he bargained-the government's agreement to recommend
> probation-was illusory.

70 F.3d at 566.  The government posited that it had an ethical duty to bring

all evidence of loss to the court, regardless of the plea agreement.  The

Tenth Circuit was critical of this position for the government knew all of this

information before it made the plea agreement.  "Given this knowledge, it is

difficult to understand how the government could, in good faith, proceed to

enter into an agreement with Mr. Cooper that could not, consistent with its

ethical duty of disclosure, be fulfilled."  70 F.3d at 566.  The court further

noted that the government did not explicitly recommend probation and

simply referenced the plea agreement:

> In the instant case, however, the government never made the

14

promised recommendation, but instead merely responded when asked by the court that the promise to make the recommendation "does appear in the plea agreement." Aplt. App. at 119. The prosecutor then proceeded to take with her left hand any conceivable benefit she had given with her right hand by stating, "But I recognize the Court cannot be bound by something that is illegal and impossible." Id. The prosecutor's statements in this case could hardly have constituted a "recommendation," enthusiastic or otherwise, and actually served to undermine Mr. Cooper's request for a sentence of probation. *Cf. United States v. Greenwood*, 812 F.2d 632 (10th Cir. 1987) (holding that government breached agreement to not recommend incarceration by arguing to the court that the defendant lacked remorse and the court should use the case to deter others from committing tax evasion).

70 F.3d at 567.  The Circuit panel concluded that "'[b]ecause the government breached its plea agreement, and because the plea agreement in this case was based on an "'unfulfillable promise,' *see Brady*, 397 U.S. at 755, the only adequate remedy in this case is to allow Mr. Cooper to withdraw his guilty plea."  *Id.* (footnote omitted).

In *United States v. McCann*, 940 F.2d 1352 (10th Cir. 1991), the parties entered into a plea agreement with a stipulation that the exact amount of controlled substance was "not readily provable"  with the joint expectation that this stipulation would keep the court from imposing a mandatory minimum sentence.  When the PSR calculated a large amount of drugs based in part on the presence of precursor chemicals, the defendant objected citing his plea agreement and the stipulation.  The sentencing

15

court eventually followed the plea agreement holding that "any other result would render that plea bargain illusory and of no force and effect and no meaning."  940 F.2d at 1357.  The Tenth Circuit reversed holding first that the sentencing court "erred in finding that the stipulation precluded the court from considering the" additional amounts of controlled substances.  The court then held that these additional amounts subjected the defendant to a mandatory minimum of which he was never advised prior to his plea.  The Circuit panel found the defendant's plea to be involuntary:

> Inasmuch as McCann was not fully aware of the consequences of his plea, we hold that he entered an involuntary guilty plea. McCann's belief, and that of the government and the court, that the stipulation prevented the court from considering the mandatory minimum sentence on Count IV was erroneous. As such, it rendered his plea involuntary. *Brady v. United States*, 397 U.S. 742, 755 (1970) (a plea of guilty must stand unless induced by misrepresentations including unfilled or unfulfillable promises); *United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990) (where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea).
>
> We hold that McCann's guilty plea was involuntary. It was based on the erroneous assumption that the stipulation precluded the court from considering the other chemicals and the mandatory minimum sentence. Moreover, inasmuch as the district court fundamentally erred when it accepted McCann's involuntary guilty plea, McCann is entitled to plead anew. *McCarthy v. United States*, 394 U.S. 459, 463-64 (1969).

940 F.2d at 1358.

16

The evidence here sustains the defendant's position that he entered his plea contemplating the possibility of probation and expecting the government would not oppose such a sentence if it was recommended in the PSR. The plea agreement plainly sets forth this contractual expectation. The defense counsel's statements at the change of plea hearing reveal that the possibility of probation was an expectation preserved through extensive plea negotiations. The government's comments during the change of plea hearing further confirm that the possibility of probation was not only recognized in the plea agreement but was also factually and legally possible as "the defendant has no criminal history and may be safety valve eligible." (Dk. 131, p. 22). The government even went so far as to say that it may recommend no imprisonment, "depending upon the recommendations of the presentence report." *Id.* The court did not correct the erroneous impressions left by these comments.

At the hearing on the pending motion, the defendant's former counsel, Robert Eye, testified that a "key consideration" for the defendant's plea was a disposition in which the defendant would not be incarcerated and that he assumed this had been achieved by the plea agreement and, in particular, by the government's promise not to oppose probation if

17

recommended in the PSR.  The defendant also testified that he did not

know probation was not allowed by statute for the offense to which he pled

and that he would not have entered his plea if he had known this.  The court

finds from all this evidence that the defendant's plea rests in significant part

on the government's promise not to oppose probation in the event of the

PSR's recommendation of the same.

The court is convinced that the government's promise was

unfulfillable in that the PSR could never lawfully recommend a sentence of

probation.  The government's alternative construction of its promise as

simply preserving the possibility of probation in the event of a motion

pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. §  3553(e) is not sustained by

the evidence of record.  First, the literal terms of the plea agreement cannot

be stretched to accommodate such a reading.  The government did not

write the plea agreement so as to condition its promise upon the

defendant's substantial assistance.  Second, a downward departure motion

under either substantial assistance provision is initiated by the government,

not the probation officer.  Thus, it would make no sense for the court to read

this term of plea agreement as providing only that the government would not

oppose its own motion.  Third, the government's comments at the change of

18

plea hearing do not sustain such a reading.  When the court asked the government's position on probation absent a recommendation in the PSR, the government said it had "no authority to" recommend such a sentence. (Dk. 131, p. 22).

The government's promise not to oppose probation was illusory, as 21 U.S.C. § 841(b)(1)(B) precluded the probation officer from recommending probation in the PSR.  The court is satisfied that the defendant's plea agreement was based in significant part on this unfulfillable promise.  As the Tenth Circuit instructs in *Cooper*, "the only adequate remedy" is to allow the defendant to withdraw his guilty plea.  70 F.3d at 567.

IT IS THEREFORE ORDERED that the defendant's motion to withdraw guilty plea (Dk. 133) is granted.

IT IS FURTHER ORDERED that the trial of this case is set for April 4, 2007, commencing at 1:30 p.m., and a status conference will be conducted on March 20, 2007, at 2:30 p.m.

Dated this 24th day of January, 2007, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

19